LEONARDO M. RAPADAS
United States Attorney
JAMIE D. BOWERS
Assistant United States Attorney
DISTRICT OF THE NORTHERN
MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP 96950
Telephone: (670) 236-2986
Fax:        (670) 236-2945

Attorneys for United States of America

FILED
Clerk
District Court

OCT 20 2005

For The Northern Mariana Islands
By_____
     (Deputy Clerk)

UNITED STATES DISTRICT COURT
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>     v.<br><br>DAI Xaio Jun<br><br>              Defendant. | Criminal Case No. 05-00022<br><br>OPPOSITION TO DEFENDANT'S<br>MOTION TO SUPPRESS<br><br>Hearing Date: November 10, 2005<br>Time:  9:00 a.m. |

Comes now the Plaintiff, United States of America, and in opposition to defendant's Motion to Suppress filed October 11, 2005, states to the Court the following:

### I. STATEMENT OF FACTS

Defendant, Dai, Xiao Jun is charged in a two-count indictment with: (Count 1), trafficking in counterfeit goods, in violation of Title 18, U.S.C. § 2320; and (Count 2), possession of a controlled substance with intent to distribute, in violation of Title 21, U.S.C. §841(a)(1) and §841(b)(1)(B). Said charges stem from an investigation by United States Immigration and Customs Enforcement officials along with United States Postal Inspectors and the Drug Enforcement Administration, which culminated in the execution of a search warrant at the defendant's apartment in Garapan, Saipan on June 29, 2005.

On June 12, 2005 a parcel from China, destined for Saipan was intercepted at the San

Francisco, California mail facility and found to contain approximately 2.75 kilos of counterfeit Viagra, a controlled substance. The package was sent via express mail. Examination of the package revealed that the counterfeit Viagra tablets were wrapped in Chinese newspaper and plastic and were concealed inside of a DVD player. The package was seized according to United States Customs protocol and the investigation was referred to the Guam Immigration and Customs Enforcement office for follow up. The package containing the DVD player concealing the counterfeit Viagra, was addressed to Chen Jian at PMB 212, P.O. Box 10002, Saipan, 96950. The package was purportedly sent from Zhu, Jun at #19, Wen Yi Road, Shene District, China. FDA inspector Bobby Smith, inspected the package at the San Francisco facility and observed that the tablets hidden inside the DVD player were consistent with counterfeit Viagra pills he had encountered on previous occasions.

Once Immigration and Customs Enforcement Agents and Postal Inspectors on Guam began investigating the case they learned that Post Office Box 10002 on Saipan belonged to a company called American Federal Group projected as a commercial mail receiving agency (CMRA). The CMRA acts as a private mail facility and distributes mail to customers that pay for their services, often at postal boxes located within the business. Investigators checked the records of the American Federal Group and learned that the business is owned by three individuals from the Peoples Republic of China. The business has been acting as a CMRA since 1994 and is located inside the Crown Market at the Chamorro Place Building, in Garapan, Saipan. The CMRA serves approximately 200 customers with box 212 rented under the name of Bai Yan.

On June 17, 2005 investigating agents on Guam received the parcel containing the counterfeit Viagra from the San Francisco mail facility. When the agents inspected the DVD player they found that it appeared to have been used before, based on the worn appearance of adhesive stickers attached to the player, evidence of rust on the rear of the DVD player and evidence that the screws holding the DVD player together showed signs of wear.

On June 20, 2005 investigating agents traveled from Guam to Saipan to receive copies of documents related to the CMRA and the Crown Market business. The agents also visited the

1  Crown Market as part of their investigation. There, they were able to identify one of the owners
2  of the business, however, no post office boxes were observed. However, a sign directly outside
3  the business indicated that the CMRA was located within the market.
4      On June 23, 2005 the investigating agents obtained postal records showing that PMB 212
5  belonged to a Bai Yan, ID# 0168 and that Bai Yan and Dai Xiao Jun were listed as those to
6  receive mail at PMB 212.
7      As part of their investigation the investigating agents learned that the counterfeit Viagra
8  found concealed in the DVD player was larger in length and width than the authentic product
9  with a slightly darker blue tone than authentic Viagra. Investigators also learned that such tablets
10 were not approved by the Food and Drug Administration and pharmacies were prohibited from
11 purchasing such medications from foreign countries. Additionally, the agents were apprized by a
12 registered pharmacist that 4000 tablets of Viagra was an unreasonable quantity for a pharmacy to
13 have on hand, and likewise an unreasonable quantity for an individual to possess for personal
14 use.
15     On June 29, 2005 Federal Immigration and Customs Enforcement agents along with
16 United States Postal Inspectors, Drug Enforcement Administration agents and various CNMI law
17 enforcement agents continued the investigation by executing a controlled delivery of the express
18 mail package containing sham Viagra tablets to the Saipan U.S. Post Office. The package was
19 placed in a bin destined for P.O. Box 10002, which belonged to the CMRA known as BBB, also
20 known as Golden Crown Market. The package was placed in the post office bin by Postal
21 Inspector Craig Hales. Agent Hales conducted surveillance and observed the CMRA
22 representative come to the box and pick up the packages designated for the CMRA. Agent Hales
23 observed the CMRA representative pick up the package and placed it in a beige Toyota van
24 which drove away from the U.S. Postal facility.
25     Officers conducting surveillance observed the van drive North on Beach Road toward the
26 Garapan area where it stopped in the front of the Golden Crown Market. Officers observed the
27 suspect package being unloaded from the van and taken in the Golden Crown Market.
28

1  Investigators had equipped the package with an electronic device which allowed the
2  officers to track the package to a limited degree and also to determine when and if the package
3  had been opened. At approximately 5:55 p.m. on June 29, 2005, officers observed a man,
4  identified as Dai, Xiao Jun, arrive at the Golden Crown Market riding a bicycle. One of the
5  surveillance officers, Major Ed Cabrera, recognized Dai from previous vice investigation
6  conducted in the Garapan, Saipan area. As the officers continued their surveillance they
7  observed the defendant leave the Golden Crown Market on his bicycle, carrying the suspect
8  package.
9  Surveillance officers followed the defendant as he traveled South on Navy Hill Road
10 toward the Hyatt Hotel, turning left down an alley toward the promenade area across from the
11 Dai Ichi Hotel. United States Immigration and Customs Enforcement Agent John Duenas
12 observed the defendant enter the Liao Ti Tour Agency located in the Paseo De Marianas
13 promenade area.
14 Agents were monitoring the package via the electronic device concealed inside to
15 determine when and if the package was open. Based on information obtained thus far, the
16 investigators did not know if the defendant was to be the ultimate receiver of the counterfeit
17 Viagra or if he was merely a delivery person who would hand off the package to the ultimate
18 receiver. The investigators planned to follow the package and wait for the electronic signal
19 indicating that it had been opened. The officers planned to approach the ultimate receiver of the
20 package and seek the receivers cooperation in furtherance of the investigation. At the time the
21 defendant was observed entering the tour agency, the agents did not know what, if any,
22 connection he had to the agency, nor did they know why he was bringing the package there.
23 The agents did not immediately enter the travel agency, but waited outside until agents
24 monitoring the electronic device inside the package were alerted that the package had been
25 opened. Agents then went into the travel agency and found that the defendant was not inside.
26 The agents determined that the defendant had left through a secret door hidden behind a mirror in
27 the rear of the business. In attempting to determine the defendant's whereabouts, and the
28 whereabouts of the package, agents asked a woman, who was apparently working in the travel

-4-

agency, where the defendant had gone. The woman from the travel agency led the agents to an apartment above the Guang Zhou Restaurant at the corner of Date Street and Coral Tree Avenue, directly across from the Dai Ichi Hotel. The woman pointed out apartment B3, located at the top of the stairs, as the defendant's apartment. Investigators noticed some shoes on the floor just outside the apartment door, which appeared to be the same shoes the defendant was wearing as agents observed him en route from the Golden Crown Market to the travel agency.

Investigators knocked on the door and loudly announced that they were law enforcement agents several times. No one answered the door however the agents were able to hear activity inside the apartment. Because the electronic transmitter in the box indicated the package had been opened, investigators decided to enter the apartment to pursue the defendant and the package because they were concerned that the evidence could be destroyed if they waited until the federal search warrant for the premises could be obtained.

The officers forcibly entered the apartment and in securing the residence they observed the defendant in the back bedroom. During a security sweep of the apartment agents observed portions of the sham Viagra tablets from the suspect package, on a desk in the bedroom, along with labels marked Viagra and some prescription pill bottles located in plain view on the bed. No other individuals were located in the apartment.

Once the residence was secured, the defendant was detained and Federal Immigration and Customs Enforcement Agent Matt Goward sought and obtained a federal Search Warrant for the premises.

In the affidavit establishing probable cause to issue the warrant, Agent Goward summarized the chain of events establishing that defendant was involved in the trafficking of counterfeit goods through his handling and transportation of a package containing the counterfeit Viagra. All of the information contained in Agent Goward's affidavit in application for the search warrant was based on the investigation of the officers prior to the warrantless entry into defendant's apartment. The only exception was Agent Goward's reference to his plain view observations of the sham Viagra tablets, labels and bottles observed in the defendant's bedroom when the apartment was secured.

Once the search warrant was obtained the officers searched defendant's apartment and found additional counterfeit Viagra, labels, packaging material and other items indicating on-going trafficking in counterfeit Viagra. Additionally, investigators found other evidence including approximately 4 pounds of marijuana packaged in a manner consistent with distribution. Investigators filed a search warrant inventory report which is hereby incorporated in this opposition by reference. (The inventory return was also attached to defendant's suppression motion.)

Following the search, defendant was arrested on June 30, 2005. He had his initial appearance before the court the next day, and subsequently, on July 7, 2005 he was formally charged in the two-count Grand Jury Indictment.

Trial is currently scheduled for December 12, 2005.

## II. DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED AS IT IS UNTIMELY

Defendant was arraigned on July 13, 2005. At the time of the arraignment the Court apprised him orally and in a written order that pretrial motions were to be filed no later than Monday, August 15, 2005. This was pursuant to Rule 12(c) of the Federal Rules of Criminal Procedure and Local Criminal Rule 12.1.

Defendant filed the pending motion to suppress on October 11, 2005, nearly 2 months after the August 15, 2005 motion deadline imposed by the Court. Defendant neither sought nor obtained an extension of time for filing the motion.

Consequently, the Court should enforce it's order and deny defendant's untimely motion.

## III. DEFENDANT'S MOTION TO SUPPRESS AND EXCLUDE EVIDENCE SHOULD BE DENIED FOR LACK OF MERIT

Defendant seeks suppression of evidence obtained as a result of the warrantless entry of his apartment by officers on June 29, 2005. The motion should be denied as meritless because the investigating officers in this case had probable cause to search defendant's apartment for evidence of criminal activity, and as the investigation of the defendant unfolded, exigent

circumstances prompted the investigators to enter defendant's apartment without a warrant to secure the scene and prevent destruction of evidence while a search warrant was obtained.

The securing of a residence by police is a seizure which implicates a defendant's Fourth Amendment rights and imposes upon the government a two-fold duty: first, the government must prove that the officers had probable cause to enter and secure the residence; and second, the government mush show that exigent circumstances justified the warrant-less entry. See *United States v. Lai*, 994 F.2d 1434, 1441 (9th Cir. 1991). The government must prove that under the totality of circumstances known to the officers at the time they entered defendant's apartment, there was a fair probability that contraband or evidence of a crime would be found inside. *Id.*

Here, investigating agents in San Francisco, California initially intercepted the package sent from China and found that it contained a large quantity of tablets determined to be counterfeit Viagra, a controlled substance. This was the basis for a felony investigation concerning trafficking in counterfeit goods. Once the package had been intercepted and found to contain counterfeit goods, the investigators were faced with the task of determining which individuals were involved in the trafficking crime. The agents equipped the package with electronic tracking devices and removed the counterfeit Viagra from inside the DVD player, substituting it with other contents. They then allowed the package to be delivered as intended. When the agents followed the package along it's delivery path into defendant's hands and subsequently to his apartment, there was probable cause to be believe that the evidence of the crime, and defendant's involvement in it, would be located there. The probable cause was heightened when the electronic transmitter indicated that the package had in fact been opened just after defendant was observed entering the travel agency with the package.

Defendant does not dispute the fact that there was probable cause to search defendant's apartment. (See Defendant's suppression motion memo p.21-22) (defendant asserts that there was probable cause for agents to secure an anticipatory search warrant). Indeed, there would have been probable cause to obtain an anticipatory warrant had the agents known in advance who was to receive the package and more importantly, where it would be opened. These details were

not known to police until defendant was observed picking up the package at the Crown Market CMRA, and subsequently taking the package to his apartment to open it.

In addition to establishing probable cause, the government must also show that exigent circumstances existed justifying the warrant-less entry. Exigent circumstances are characterized as those circumstances that would cause a reasonable person to believe that entry was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts. *United States v. Lai* at 1442. The reasonableness of a warrantless entry is evaluated in view of the totality of the circumstances seen from the prospective of the police officers at the time of the entry. *Id.* Here, when the officers executed the warrantless entry into defendant's apartment they had information via the electronic transmitter, that the package had been opened just after defendant had been observed entering the travel agency. Officers went into the travel agency and upon finding that defendant had eluded them through the secret passage way behind the mirror, they pursued him and located his apartment with the aid of the travel agency employee who pointed out his apartment. The female employee's information was corroborated by the fact that defendant's shoes were observed outside the apartment door. Based on the fact that the evidence was subject to being readily destroyed, the fact that the package containing the transmitter had been opened, and the officers' belief that defendant knew he was being followed (causing him to take an evasive path to his apartment) officers were reasonably justified in entering defendant's apartment to secure the scene and the defendant while a search warrant was obtained.

When officers entered the apartment and conducted a sweep to secure the residence, they found nothing more than the evidence they already knew they would find, based on their preliminary investigation prior to entry. Namely, the officers found the defendant, whom they had seen carrying the suspect package, and some of the contents of the package which the officers themselves had placed inside. In short, when the officers entered to secure the apartment, they found no evidence beyond that which had already been obtained by them in their investigation. Once the defendant and his apartment were secured the threat of evidence being

destroyed was eliminated and the officers proceeded directly with their plan to obtain a search warrant. When the warrant was obtained a comprehensive search of the defendant's apartment took place revealing additional evidence, including marijuana package for sale and indicia of previous counterfeit Viagra trafficking. Contrary to defendant's assertions, these items were found and seized only after the search warrant had been obtained.

The government maintains that the warrantless entry to secure defendant's apartment was justified based on exigent circumstances. However, even if the initial entering and securing of defendant's residence was in violation of his Fourth Amendment rights, the subsequent search of the premises and evidence obtained in the search would be admissible because the later search pursuant to a warrant was based upon an independent source. See *Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 2533 (1987). In *Murray*, the Court held that evidence seized pursuant to a subsequently issued warrant, although initially discovered during a search following an illegal entry, would be admissible provided that the later seizure pursuant to a warrant, was genuinely independent of the earlier illegal activity. *Murray*, 487 U.S. 533, 542, 108 S.Ct. 2529, 2535. The simple fact that an application for a warrant contains information obtained from an illegal search does not by itself signify that the independent source doctrine does not apply. If the application for a warrant contains probable cause apart from the improper information, the warrant is lawful and the independent source doctrine applies, providing that the officers were not prompted to obtain the warrant by what they observed during the initial entry. *United States v. Jenkins*, 396 F.3d 751, 758 (6th Cir. 2005).

In the present case, with the exception of paragraph 28 of the agent's affidavit in support of the search warrant, all of the information presented to the Court was obtained by agents prior to and independent of the warrantless entry. In paragraph 28, the applying agent made reference to the scene of the warrantless entry stating: "after gaining entry into the residence, your affiant observed JUN in the bedroom of his apartment. After securing JUN, a safety sweep was made of the apartment for other subjects and dangerous weapons. During the sweep, special agents observed portions of the sham Viagra tablets on the desk in the bedroom, along with labels marked Viagra, and prescription bottles on the bed." The information provided in paragraph 28

was not essential to the Court's finding of probable cause to issue the warrant. Paragraph 28 of the affidavit merely apprised the Court of the status of the situation wherein defendant was detained in his apartment and that the scene was secured while a warrant was sought. When paragraph 28 of the affidavit is excluded, the facts asserted in the balance of the affidavit clearly establish probable cause to believe that evidence of a crime was located in defendant's apartment and that the premises was the sight of the subject package followed by the investigating agents. Irrespective of the legality of the initial entry into defendant's apartment to secure the premises, this Court may examine the balance of the underlying search warrant affidavit for probable cause in order to determine whether the evidence lawfully obtained was sufficient to determine that the search pursuant to the warrant should be upheld. *United States v. Korman*, 614 F.2d 541, 547 (6th Cir. 1980). See also *Jenkins*, 396 F.3d 751, 760.

It is unclear from defendant's motion, just what evidence obtained in the warrantless entry, he is moving to suppress. Regardless, it is the government's position that all the evidence observed by officers at the time of the warrantless entry, was already known to them from independent investigation. Additional items of evidence were found only after a warrant was properly obtained.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to suppress and exclude evidence should be denied; first, because it is untimely and in violation of the court's pretrial order; and secondly, because the motion is without merit as the search of defendant's apartment and seizure of the various items of evidence were lawfully performed by investigating officers.

Respectfully submitted,

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
JAMIE D. BOWERS
Assistant United States Attorney

-10-