F I L E D
Clerk
District Court

NOV 1 5 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Robert Tenorio Torres
Attorney at Law
Plata Drive, Whispering Palms (Chalan Kiya)
P.O. Box 503758
Saipan, MP 96950

Tel: (670) 234-7859
Fax: (670) 234-5749

Attorney for Defendant DAI, Xiao Jun

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>DAI, XIAO JUN,<br><br>     Defendant. | Criminal Case No. 05-00022<br><br>**DEFENDANT DAI XIAO JUN'S MEMORANDUM IN SUPPORT OF MOTION FOR DISCOVERY**<br><br>NOV 2 3 2005<br>Date: _____<br>Time: 9:00 a.m.<br>Judge: Hon. Alex R. Munson |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Early on in this proceeding, Mr. Dai requested, and continues to request, all information, documents, statements and material to which he was entitled under Federal Rule of Criminal Procedure 16.[1] This includes

---

[1] See Letter from Robert T. Torres, Esq. to AUSA Jamie Bowers dated July 14, 2005 and attached hereto as Exhibit "A."

those items which are "material to the preparation of the defendant's defense or are intended for use by the government as evidence-in-chief at the trial, or were obtained from or belonged to the defendant." Fed. R. Crim. P. 16(a)(1)(C).

This motion is not intended to relieve the government of the duty to provide all such information to defendants or to supplement such disclosure as required. Fed. R. Crim. P. 16(c). Rather, this motion is designed to focus on specific information, evidence and material to which the defendant is entitled, but which have not yet been provided.

## BACKGROUND

For reasons yet known, certain postal and/or customs inspectors intercepted an express mail package that had been routed through San Francisco and addressed to one Chen Jian in Saipan (the "Package"). Without bothering to obtain a search warrant, on or about June 12, 2005, a group of federal and state officials opened the Package and discovered approximately 2.75 kilograms of suspected counterfeit Viagra inside the cd player comprising the Package's contents. After removing the suspected Viagra and sending a portion off to a local lab for testing, the government forwarded the Package to ICE RAC/Guam for reassembly and an ensuing sting operation involving a controlled delivery to a post office box in

Saipan.

Prior to reassembling the Package, the government substituted candy for the suspected Viagra and inserted an electronic alerting device inside the Package. Upon information and belief, the device was designed to signal when the Package was opened and the inner bundle removed. Government agents then took the reassembled Package and arranged for its delivery to Saipan where Major Edward Cabrera and CNMI Customs Agent Albert Palacios, among others, staged a surveillance of the Package up to its delivery on June 29, 2005 to PMB 212 at Golden Crown Market in Navy Hill. At no time did the government or any of the persons involved in the surveillance of the Package bother to obtain a search warrant from any federal or CNMI court until *after* the Package had been opened and a residence purportedly belonging to Mr. Dai had been searched.

The remaining facts pertinent to this motion are set forth in Mr. Dai's Motion to Suppress, filed on October 11, 2005. They reflect that the Golden Crown Market is a permitted Commercial Mail Receiving Agency (CMRA) located in Navy Hill, Saipan. PMB 212, a mailbox located in the Golden Crown Market, belongs to a Bai YAN, although Postal Form 1583 reflects that Dai Yan and Dai Xiao Jun are also listed as recipients entitled to

receive mail at that address.[2]

At approximately 4:55 p.m. on the afternoon of June ___, 2005, Major Ed Cabrera witnessed a person he identified as Dia Xiao Jun arrive at the Golden Crown Market riding a bicycle. Major Cabrera subsequently saw Mr. Dai exit the CMRA carrying the Package. Government agents followed Mr. Dai from the CMRA on Navy Hill to the Liao Ti Tour agency located in the Promenade area of Garapan.

When the surveillance team lost visual contact with Mr. Dai shortly thereafter, the agents stormed the tour agency with guns drawn. According to Special Agent Matthew Goward, they believed Mr. Dai had absconded through a secret door hidden behind a mirror in the rear of the business, although no one saw him do so. See Complaint, Criminal Case No. CR 05-00022. Following the perceived loss of Mr. Dai, the agents accosted an employee of the agency, Ms. Huang Min Hui. Government agents inundated Ms. Huang with questions as to Mr. Dai's whereabouts. Because Ms. Huang did not speak English, because no member of the surveillance team bothered to identify themselves, and because Ms Huang was forcibly

---

[2] *See Complaint*, Criminal Case No. CR-05-00022 at ¶ 1 (sworn declaration of Matthew Goward); Affidavit in Support of Warrant prepared by Matthew L Goward, Senior Special Agent and attached as Attachment "A" to Application for Search Warrant (Case MC 05-00101).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

removed from the agency to assist in them, Ms. Huang was understandably terrified. See Declaration of Huang Min Hui, attached as Exhibit "B" to Motion to Suppress. The agents forced Ms. Huang to accompany them to a nearby apartment building where they continued their quest to locate Mr. Dai.

The agents paraded Ms. Huang through each floor of the apartment building, asking her "This room?" as they passed every door. When they reached the third floor and observed a pair of shoes similar to the ones worn by Dai Xiao Jun outside unit B-3,[3] the agents forcibly effected their entry into Apartment B-3 by breaking down the door. Despite ample opportunity to obtain an anticipatory warrant to search Apartment B-3 along with the residences of all persons entitled to receive mail from PMB 212 at Royal Crown Market, no federal or state agent bothered to do so. Instead, after effecting their forced warrantless entry into the unit, federal agents proceeded with their initial search of the unit and subsequent arrest of Mr. Dai. On July 7, 2005 Mr. Dai was subsequently indicted on charges brought in this case and the Complaint followed.

Although the Government has made available to the defense certain

---

[3] See Report of Investigation by Special Agent Goward, attached as Exhibit "A" to Motion to Suppress.

documents and other materials generated during the course of this case, additional and further materials are believed to exist that are critical to adequate defense preparation. In addition to those materials requested by letter from AUSA Bowers,[4] they are:

1.   Books, papers, reports, test results, documents, photographs, tangible objects, and/or copies or portions thereof that explain, mention, or relate to the use and operation of that certain electronic monitoring or tracking device that the Government claims to have inserted into the package addressed to Chen Jian at PMB 212 and containing approximately 2.75 kilograms of suspected counterfeit Viagra during the course of the "controlled delivery;"

2.   The electronic monitoring or tracking device itself, including information identifying the name, serial number, manufacturer, and model

---

[4] In counsel's July 14, 2005 request to AUSA Bowers, Mr. Dai requested the following information: (1) statements made by the defendant; (2) documents, statements, reports, and tangible evidence; (3) prior record/other act evidence; (4) documents and objects; (5) agent's reports, notes, memos; (6) evidence of bias or prejudice of government witness; (7) prior record/other acts of government witnesses; (8) evidence that a prospective witness is under investigation; (9) evidence regarding ability to testify; (10) personnel files; (11) government witnesses: last known address and names; (12) evidence that government witness taken and failed polygraph; (13) name and last known address of every witness to the crime; (14) favorable testimony; (15) resumes of experts that government intends to call; (16) expert reports and summaries; (17) promises made or deals with government witnesses; and (18) specific inquiries of agents. Mr. Dai specifically requested that government make specific inquiry of each government agent connected to this case for the discovery requested above.

thereof;

3.  Any scientific studies and other memoranda, reports, summaries, and opinions of a scientific or technical nature upon which the specific allegations of this case were based, including, but not limited to the results or reports of physical examinations and of scientific tests or experiments made in connection with this case and particularly any writings, reports, recordings, documents, or photographs reflecting any laboratory analysis of the suspected Viagra and the electronic tracking device mentioned above; and

4.  Any results or reports of physical examinations and of scientific tests or experiments made in connection with any other package or parcel addressed to any person entitled to receive mail at PMB 212, Saipan, MP 86850.

Mr. Dai believes he is entitled to these materials on the grounds set forth below.

## ARGUMENT

**A.  Information Relating to the Use and Operation of the Tracking Device**

Upon a defendant's request, Rule 16(a)(1)(F) requires the government to permit a defendant to inspect and to copy or photograph the results or

reports of any physical examination and of any scientific test or experiment if the item is within the government's possession, custody, or control; when the attorney for the government knows — or through due diligence should know — that the item exists; and if the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial. See Fed. Crim. R. Civ. P. 16(a)(1)(F). Since the tracking device inserted into the Package was invoked by the government as some excuse for its failure to obtain a warrant and as the impetus for the precipitous and warrantless entry into Mr. Dai's apartment, Mr. Dai is entitled to information explaining, demonstrating, and/or otherwise establishing that the electronic monitoring device was in proper working.

Further, due process requires that the government not suppress evidence favorable to the accused. Upon request, therefore, the government must disclose such information to the defense. *Brady v. Maryland*, 373 U.S. 83, 835 S.Ct. 1194, 10 Led. 2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 Led. 2d 342 (1976). The constitutional principles entitling a defendant to disclosure of exculpatory evidence and material also govern the timing of that disclosure.

Federal Rule of Criminal Procedure 16(a)(1)(c), moreover, stands as an independent source of the government's obligation to provide the defense

with documents or evidence which are "material to the preparation of the defendant's defense...." This includes information or evidence which might be used to impeach the government's witnesses and undermine their credibility. *See U.S. v. Five Persons*, 472 F. Supp. 64, 67 (D.C.N.J. 1979); *accord U.S. v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 , 87 L.Ed. 2d 481 (1985); *U.S. v. Iverson*, 637 F. 2d 799 (D.C. Cir. 1980); rehearing denied 648 F. 2d 737 (D.C. Cir. 1981). Since discovery may disclose: (1) that the device actually failed to alert; (2) that law enforcement authorities manipulated the device so that it alerted; or (3) that the device alerted earlier than the government agents in charge of the sting operation contend that it did, under United States v. Brady and its progeny, then, Mr. Dai is entitled to this information.

**B.    The Electronic Monitoring or Tracking Device Itself**

An electronic tracking device--also called a "beeper," "beacon," or "transponder"--is a miniature, battery-powered radio transmitter that emits a recurrent signal at a set frequency. When monitored by directional finders, the beeper provides information as to the location and movement of the object to which it is attached. *See United States v. Bailey*, 628 F.2d 938, 939 n. 1 (6th Cir.1980). Since the device itself was obtained from the defendant,

and since the government relied on the device to identify Mr. Dai and the apartment where he allegedly opened the Package, in addition to the reasons set forth in subsection A *supra*, it is therefore discoverable under Fed. R. Crim. P. 16(a)(1)(E) and qualifies as Brady evidence. To mount an effective defense, moreover, it is critical to examine the device itself to determine whether and if it malfunctions, as well as to ascertain whether it had previously malfunctioned.

**C. Scientific Tests and Analysis of the Counterfeit Viagra**

Although Rule 16(a)(1)(F) entitles Mr. Dai to the results of scientific tests that the government intends to use at trial, *Brady* entitles Mr. Dai to review those tests that were taken and analyzed, but which, for whatever reasons, the government has rejected.

Discovery produced to date indicates that as early as June 17, 2005, Special Agent Goward may have received or reviewed laboratory tests of the counterfeit Viagra at issue in this case. The Affidavit in Support of the Government's Application for a Warrant, moreover, indicates that as early as June 23, 2005, Special Agent Goward and TFA Barbara Tayama ordered or participated in a comparison of authentic Viagra and the suspected counterfeit Viagra, and performed a weight analysis between two products made. See Affidavit in Support of Application for Warrant at ¶¶ 22-23.

For whatever reason, the government has yet to furnish the results of any laboratory testing or other analysis of the suspected Viagra. Because Mr. Dai is seeking a meaningful opportunity to prepare his defenses and cross-examination, to be meaningful, disclosure must occur at a time when he can investigate the information, see what new information it leads to, and formulate a plan for the utilization of the information pre-trial and during trial. For these reasons, Mr. Dai requests the release of all tests and other scientific information relating to the suspected Viagra immediately.

### D.  Results or Reports of Physical Examinations and of Scientific Tests or Experiments Made in Connection with Any Other Package or Delivery to PMB 212

The Government claims to have seized additional packages and contraband bearing a delivery address of PMB 212, Saipan, MP 96950. To the extent that any of these additional packages bear on the charges against Mr. Dai, he seeks disclosure of their contents, along with tests or experiments made in connection therewith.

According to the Advisory Committee Notes to Rule 16, Rule 16(a)(1)(D) places a duty upon the government to disclose to the defendant reports of examinations and tests, with the limitation that these must have been "made in connection with the particular case." Under these circumstances, the Committee felt that mandatory disclosure was justified,

due to (1) the difficulty in testing expert testimony at trial without advance notice and preparation; (2) the unlikelihood that this type of evidence will be distorted or misused if disclosed prior to trial; and (3) the fact that, to the extent that a test may be favorable to the defense, its disclosure is mandated under the rule of *Brady v Maryland*, 373 US 83, 10 L Ed 215, 83 S Ct 1194 (1963).

Accordingly, in *United States v. Bel Mar Laboratories*,[5] the court ruled that Defendants, charged with introducing into interstate commerce adulterated and misbranded drugs, were entitled to portion of samples which government used in its tests. The court also ordered the government to supply reports of experts retained to test and analyze the subject drugs, as well as the identifying marks, if any, of the packages from which the analyzed samples were obtained. 284 F.Supp. at 887.  Finding further that there was good cause to grant defendants' application for permission to inspect and copy or photograph statements or admissions, labels, cartons and inserts within the Government's possession, custody or control, the court ordered the United State Attorney to produce the discovery at a pretrial conference. *See Also United States v. Feola*, 651 F.Supp. 1068, 1146 (S.D.N.Y.1987).

---

[5] 284 F.Supp. 875 (E.D.N.Y. 1968).

## CONCLUSION

Jun Xiao Dai seeks the materials requested above in order to prepare his defense at a time when he can investigate the information, explore what new information it leads to, and formulate a plan for the utilization of the information pre-trial and during trial. For the reasons set forth above, therefore, Mr. Dai requests that his motion for Discovery be granted.

Respectfully submitted this 14th day of November, 2005.

_____
ROBERT T. TORRES Bar No. F0197
Attorney for Dai, Xiao Jun




**ROBERT TENORIO TORRES**
ATTORNEY AT LAW
1st Floor D'Torres Building
P.O. Box 503758 CK
Saipan, MP 96950



Tel. (670) 233-7859
Fax. (670) 233-5749

e-mail: rttlaw@vzpacifica.net

July 14, 2005

Jamie D. Bowers
Assistant U.S. Attorney
U.S. Attorney's Office
Horiguchi Building

RE:   *USA, v. DAI, Xiao Jun.* **CRIMINAL CASE No. CR-05-00022**
      **Rule 16 Discovery Request.**

Dear Mr. Bowers,

I represent Mr. Xiao Jun Dai in the above-entitled case. On behalf of and as counsel for Mr. Dai, I hereby acknowledge that I have received the discovery from your office on July 13, 2005. However, this is to expressly request Rule 16 material as follows:

(1) <u>Statements</u>. All written and oral statements made by the defendant. This request includes, but is not limited to, any rough notes, "field notes", records, reports, transcripts or other documents and tapes in which statements of the defendant are contained. The substance of oral statements which the government intends to introduce or use at trial Rule 16(a)(1)(A) and (B)(changes to Federal rules effective December 1, 2002); *Brady v. Maryland*, 373 U.S. 83 (1963).

(2) <u>Documents, statements, reports tangible evidence</u>. All documents, statements, agent reports, and tangible evidence favorable to the defendant on the issue of guilt or which affects the credibility of the government's case. This evidence must be produced pursuant to *Brady v. Maryland; see also, United States v. Agurs*, 427 U.S. 97 (1976) and *Kyles v. Whitley*, 115 S.Ct. 1769 (1995).

(3) <u>Prior record/other act evidence</u>. All evidence, documents, records of judgments and convictions, photographs and tangible evidence, and information pertaining to any prior arrests and convictions or prior bad acts. Evidence of prior record is available under Rule

Page 1 of 4

EXHIBIT "A" 5

16(a)(1)(D)(effective December 1, 2002). Evidence of prior similar acts is discoverable under Fed. R. Evid. 404(b) and 609.

(4) <u>Documents and Objects</u>. All evidence seized as a result of any search, either with our without a warrant, in this case. This request includes any administrative searches and materials recovered by personnel from other law enforcement agencies, including the CNMI Division of Immigration and Drug Enforcement Administration. Rule 16(a)(1)(C). In addition, it is requested that copies of all search and arrest warrants issued in connection with this prosecution, including any supporting affidavits or telephonic transcriptions, be provided. All returns of inventory are also requested.

(5) <u>Agent's reports, notes, memos</u>. All arrest reports, investigator's field notes, memos from arresting officers, sworn statements, and prosecution reports pertaining to the defendant. *See,* Rule 16(a)(1)(B). In addition, it is requested that any witness interview notes that could be considered to be statements attributable to the witness be provided. *See Goldberg v. United States*, 425 U.S. 94 (1976).

(6) <u>Bias of government witness</u>. Any evidence that any prospective government witness is biased or prejudiced against the defendant or has a motive to falsify or distort his/her testimony. *See Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988). The prosecutor has a duty to search and examine files held by other government agencies to determine whether they contain any material evidence favorable to the defense. *See <u>Ritchie, supra</u>; <u>Kyles v. Whitley</u>*, 115 S.Ct. 1555 (1995).

(7) <u>Prior record/other acts of government witnesses</u>. Any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction. Fed. R. Evid. 608(b) and *Brady*.

(8) <u>Investigation of witness</u>. Any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal or official misconduct. *United States v. Chitty*, 760 F.2d 425 (2d Cir.), *cert. denied*, 474 U.S. 945 (1985).

(9) <u>Evidence regarding ability to testify</u>. Any evidence, including any medical or psychiatric reports or evaluations, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988); *Chavis v. North Carolina*, 637 F.2d 213, 224 (4th Cir. 1980); *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978).

(10) <u>Personnel files</u>. It is requested that the government review each agent's personnel file for review for information requested in the foregoing paragraphs above and determine whether there is any impeachment information contained in the files. *See United State v.*

*Henthorn*, 931 F.2d 29 (9th Cir. 1991). If you dispute the substance of this information such records or documents may be tendered to the Court for an in-camera review.

(11) <u>Government witnesses</u>. The names and last known address of each prospective government witness. *See United States v. Neap*, 834 F.2d 1311 (7th Cir. 1987); *United States v. Tucker*, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); *United States v. Cook*, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).

(12) <u>Evidence of failed polygraph of government witness(es)</u>. Disclosure that any government witness has taken and failed a polygraph is requested. *See, Bartholomew v. Wood*, 34 F.3d 870 (9th Cir. 1994).

(13) <u>Other witnesses</u>. The name and last know address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government witness. *United States v. Cadet*, 727 F.2d 1469 (9th Cir. 1984).

(14) <u>Favorable testimony</u>. The name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity or participation in the crime charged. *Jackson v. Wainwright*, 390 F.2d 288 (5th Cir. 1968); *Chavis v. North Carolina*, 637 F.2d 213, 223 (4th Cir. 1980); *James v. Jag*, 575 F.2d 1164, 1168 (6th Cir. 1978); *Hudson v. Blackburn*, 601 F.2d 785 (5th Cir. 1975).

(15) <u>Expert/resumes</u>. The curriculum vitae of any and all experts the government intends to call at trial, including any and all books, treaties or other papers written by the expert which is relevant to the testimony.

(16) <u>Expert Reports and summaries</u>. Production of any and all reports of any examinations or tests, is requested pursuant to Rule 16(a)(1)(G). In addition, it is requested that the government disclose a written summary of testimony the government intends to use under Fed. R. Evid. 702, 703 or 705.

(17) <u>Promises made or "deals" with government witnesses</u>. Under *Giglio v. United States*, 405 U.S. 150 (1972), the government must provide all promises of consideration given to witnesses. *See also, United States v. Shaffer*, 789 F.2d 682 (9th Cir. 1986). This request includes cooperation agreements with witnesses who are not called as government witnesses. *See United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993).

(18) <u>Specific inquiries of agents</u>. It is requested that the government make specific inquiry of each government agent connected to the case for discovery requested above. *See Kyles*

Page 3 of 4

*v. Whitley*, 115 S.Ct. 1555 (1995) ("no one doubts that police investigators sometimes fail to inform a prosecutor of all they know" but "neither is there any serious doubt that procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it").

   (19)  <u>Statement by government of refusal to provide</u>.  The government is requested to advise if it has any of the above-requested items or other items/documents regarding this case but refuses to provide them to the defense.


Sincerely,

*[signature]*
ROBERT T. TORRES
Attorney at Law