F I L E D
Clerk
District Court

NOV 1 8 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1 | **Robert Tenorio Torres**
**Attorney at Law**
2 | Plata Drive, Whispering Palms (Chalan Kiya)
P.O. Box 503758
3 | Saipan, MP 96950

Tel: (670) 234-7859
4 | Fax: (670) 234-5749

5 | Attorney for Defendant DAI, Xiao Jun

6

7

8 | # IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

9 | **UNITED STATES OF**
**AMERICA,**
10

11 |                          **Plaintiff,**

12 | **vs.**

13 | **DAI, XIAO JUN,**

14 |                          **Defendant.**

15

16

| **Criminal Case No. 05-00022**

**DEFENDANT DAI XIAO JUN'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS SEARCH OF MAIL**

Date: NOV 2 3 2005 _____
Time: _9:00 a.m._
Judge: Hon. Alex R. Munson

17 | ## MEMORANDUM OF POINTS AND AUTHORITIES

18

19 | ## INTRODUCTION

20 | Dai, Xiao Jun faces charges of trafficking in counterfeit goods in

21 | violation of 18 U.S.C. § 2320, and unlawful possession of a controlled

22 | substance with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1)

23 | and 841(b)(1)(B). Both charges stem from what the government

*(vertical sidebar)* Robert Tenorio Torres  Attorney at Law  P.O. Box 503758 - Saipan MP 96950  (670) 234-7859

characterizes as a routine interception of an international express mail

package that had been routed from China through San Francisco and

addressed to one Chen Jian in Saipan (the "Package").[1]

There is no dispute that the Package was sent from *outside* the

Customs territory of the United States, and that the Package was never

destined for delivery *within* the Customs territory of the United States.[2]

Nor were there any facts articulated that raised suspicion about the

Package's contents on the part of government officials.  Because the

Customs Inspectors were never empowered to search international mail not

destined for delivery within the Customs territory of the United States, the

search was improper.  The evidence seized as a result of the search should,

accordingly be suppressed and the ensuing indictment dismissed.

## BACKGROUND

On June 12, 2005, at the International Mail Facility at San Francisco,

certain postal and/or customs inspectors intercepted an express mail

---

[1] See Government's Opposition to Defendant's Motion to Suppress at 1-2 (admitting that the package had been seized "according to United States Customs protocol").  See also Department of Homeland Security ICE Report of Investigation, Case No. GM08NEO5GM0001 (July 28, 2005) (DAI00031-00036), a copy of which has been filed with this court as Exhibit "A" to Dai's Motion to Suppress on October 11, 2005.

[2] See *Id.* at 2:7-8 ("The package ... was addressed to Chen Jian at PMB 212, P.O. Box 10002, Saipan, 96950 ... [and] was purportedly sent from Zhu, Jun at #19, Wen Yi Road, Shene District, China.").

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    package that had been routed through San Francisco and addressed to one

2    Chen Jian in Saipan (the "Package").

3       Although the Northern Mariana Islands lies outside U.S. Customs

4    jurisdiction,[3] and even though Customs Officials did not articulate any facts

5    prompting their detention of the Package, no government agent ever

6    obtained a warrant prior to opening it. A team of federal government

7    officials proceeded to open the Package, and a subsequent search of its

8    contents revealed approximately 2.75 kilograms of suspected counterfeit

9    Viagra sequestered inside the DVD player comprising the Package's

10   contents. *See* Government's Opposition to Dai's Motion to Suppress at 2.[4]

11      After removing the suspected Viagra and sending a portion off to a

12   local lab for testing, the government forwarded the Package to ICE

13   RAC/Guam for reassembly and an ensuing sting operation involving a

14   controlled delivery to a post office box in Saipan. *Id.* at 2-3. At no time did

15   the government or any of the persons involved in the surveillance of the

16   Package bother to obtain a search warrant from any federal or CNMI court

17

18

19

20        [3] The Northern Mariana Islands are not included within the customs territory of

21   the United States. See COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN
     POLITICAL UNION WITH THE UNITED STATES OF AMERICA (hereinafter, "Covenant") § 603, 48 U.S.C. § 1601 note,

22   *reprinted in* Commonwealth Code at B-101 et seq.

         [4] It was only after the parcel had been opened and the dvd player inside inspected
23   and examined that the government agent observed that the adhesive on the stickers were
     worn and that the screws holding the unit together showed evidence of wear.

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1   until *after* the Package had been opened and a residence purportedly

2   belonging to Mr. Dai had been searched.

3       On the basis of the initial "random inspection" and the subsequent

4   warrantless search of Mr. Dai's residence, on July 7, 2005 Mr. Dai was

5   subsequently indicted on charges brought in this case and several motions

6

7   followed.

8   **A. APPLICABLE STATUTE AND CUSTOMS REGULATIONS**

9       The statute governing Customs searches of incoming international

10  mail packages is 19 U.S.C. § 1582, which reads in its entirety as follows:

11

12          The Secretary of the Treasury may
            prescribe regulations for the search of
13          persons and baggage and he is authorized
            to employ female inspectors for the
14          examination and search of persons of their
            own sex; and all persons coming into the
15          United States from foreign countries shall
            be liable to detention and search by
16          authorized officers or agents of the
            Government under such regulations.
17

18  19 U.S.C. § 1582; see *United States v. Taqhizadeh,* 41 F.3d 1263, 1265 (9th

19  Cir. 1994) (en banc) ("*Taqhizadeh II*") (section 1582 governs customs

20  searches of international mail packages arriving at the border from a foreign

21  country).

22

23      The regulations promulgated pursuant to this statute, however, render

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

"subject to "Customs examination" "only that "mail arriving from outside the Customs territory of the United States *which is to be delivered within the Customs territory of the United States*," with the exception of certain mail addressed to United States government officials and diplomatic mail. 19 C.F.R. § 145.2(b) (emphasis added).[5/] The authority to search pursuant to

[5]  19 C.F.R. § 145.2 provides:

145.2 Mail subject to Customs examination.

(a) Restrictions.  Customs examination of mail as provided in paragraph (b) of this section is subject to the restrictions and safeguards relating to the opening of letter class mail set forth in § 145.3.

(b) Generally.  All mail arriving *from outside the Customs territory of the United States which is to be delivered within the Customs territory of the United States and all mail arriving from outside the U.S. Virgin Islands which is to be delivered within the U.S. Virgin Islands*, is subject to Customs examination, except;

(1) Mail known or believed to contain only official documents addressed to officials of the U.S. Government;

(2) Mail addressed to Ambassadors and Ministers (Chiefs of Diplomatic Missions) of foreign countries; and

(3) Letter class mail known or believed to contain only correspondence or documents addressed to diplomatic missions, consular posts, or the officers thereof, or to international organizations designated by the President as public international organizations pursuant to the International Organizations Act (see § 148.87(b) of this chapter).  Mail, other than letter class mail, addressed to the designated international

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1   this regulation is further "subject to the restrictions and safeguards relating

2   to the opening of letter class mail set forth in § 145.3." *Id.* at § 145.2(a).

3       Regulation 145.3, in turn, contains two levels of restriction on the

4   authority to search "sealed letter class mail."[6]  Sealed letter class mail which

5   appears to contain only correspondence may be searched only with a search

6   warrant or with the written consent of the sender or addressee.  *Id.* at §

7   145.3(b).  The regulation applies a more lenient standard to searches of

8   other sealed letter class mail.[7]  Thus, with some exceptions that are

9

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

> organizations is subject to Customs examination
> except where the organization certifies under its
> official seal that the mail contains no dutiable or
> prohibited articles.  Any Customs examination made
> shall, upon request of the addressee international
> organization, take place in the presence of an
> appropriate representative of that organization.

[6] Customs regulations define "sealed letter class mail" to mean "letter class mail sealed against postal inspection by the sender." 19 C.F.R. § 145.1(c).  The regulations define "letter class mail" to include "any mail article, including packages, post cards, and aerogrammes, mailed at the letter rate or equivalent class or category of postage." Id. § 145.1(b). Under section 145.1(b), then, the Package should qualify as "sealed letter class mail."

[7] Regulation § 145.3, relating to the Opening of letter class mail, provides:

> (a) Matter in addition to correspondence.  Except as provided in
> paragraph (e), Customs officers and employees may open and
> examine sealed letter class mail subject to Customs examination
> which appears to contain matter in addition to, or other than,
> correspondence, *provided they have reasonable cause to suspect*
> *the presence of merchandise or contraband.*

> (b) Only correspondence.  No Customs officer or employee shall
> open sealed letter class mail which appears to contain only

inapplicable here:

> Customs officers and employees may open
> and examine sealed letter class mail subject
> to Customs examination which appears to
> contain matter in addition to, or other than
> correspondence, provided they have

———————————

correspondence unless prior to the opening:

(1) A search warrant authorizing that action has been obtained
from an appropriate judge of United States magistrate, or

(2) The sender or the addressee has given written authorization
for the opening.

(c) Reading of correspondence. No Customs officer or employee
shall read, or authorize or allow any other person to read, any
correspondence contained in any letter class mail, whether or not
sealed, unless prior to the reading:

(1) A search warrant authorizing that action has been obtained
from an appropriate judge or United States magistrate, or

(2) The sender or the addressee has given written authorization
for the reading.

(d) Other types of correspondence. The provisions of paragraph
(c) shall also apply to correspondence between school children
and correspondence of the blind which are authorized to be
mailed at other than the letter rate of postage in international mail.

(e) Certain Virgin Islands mail. First class mail originating in the
Customs territory of the United States and arriving in the U.S.
Virgin Islands, which is to be delivered within the U.S. Virgin
Islands, shall not be opened unless:

(1) A search warrant authorizing that action has been obtained
from an appropriate judge or United States magistrate, or

(2) The sender or the addressee has been given written
authorization for the opening.

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

reasonable cause to suspect the presence of
merchandise or contraband.

*Id.* § 145.3(a).

Thus, Customs regulations establish four categories of mail, each of which is subject to a different level of authority to search: (i) certain official and diplomatic mail is absolutely immune from Customs examination; (2) sealed letter class mail that appears to contain only correspondence is subject to examination only with consent or a search warrant; (3) sealed letter class mail that appears to contain matter in addition to or other than correspondence is subject to examination if there is "reasonable cause to suspect the presence of merchandise or contraband"; and (4) mail that is not sealed letter class mail is subject to examination without limitation.

Customs has itself provided guidance as to when "reasonable cause" exists within the meaning of its regulations. According to Customs, the question of whether "there is 'reasonable cause to suspect' that merchandise or contraband is contained in sealed letter class mail is ultimately a matter of judgment for each Customs official, based on all relevant facts and circumstances." 19 C.F.R. Pt. 145, App. C. The appendix to the Regulations goes on to list a number of circumstances that, based on "[p]ast practice, ....provide 'reasonable cause to suspect' and permit the opening of sealed

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

letter class mail." Without any parameters whatsoever, in Customs view, circumstances sufficient to establish reasonable cause are when "[t]he mail article is a box, carton, or wrapper other than a thin envelope." *Id.*

## B. APPLICABLE CASE LAW

### 1. The Ninth Circuit's *Taqhizadeh* Decisions

### A. Taghizadeh I

1.    In *United States v. Taqhizadeh,*[8] Customs inspectors at Los Angeles International Airport opened a package arriving from Turkey and addressed to a post office box in Irvine, California. The object was arriving in the United States destined for a United States address. Inside the package were 75 sticks of opium weighing 1487 grams. When Defendant Taghizadeh was arrested after taking delivery of the package, he moved to suppress the evidence, arguing that the search violated 19 U.S.C. § 482, which regulation requires Customs officials to have "reasonable cause to suspect there is merchandise which was imported contrary to law" before conducting a search. The District Court granted the motion, finding that Customs officials had no reasonable cause to suspect that the package contained contraband.

---

8    19 F.3d 1315 (9th Cir.) ("*Taghizadeh I*"), withdrawn and superseded on rehearing en banc, 41 F.3d 1263 (9th Cir. 1994).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Following an appeal by the government, the Ninth Circuit reversed. The court found that Customs agents had sufficient reasonable cause under 19 U.S.C. § 482 to search the package because it originated from Turkey, a well-known source country for narcotics, and was addressed to a U.S. post-office box, a common destination in drug operations.

## B. **Taghizadeh II**

Following the panel's decision in *Taqhizadeh I*, Taqhizadeh petitioned for rehearing and rehearing *en banc*, and the Ninth Circuit ordered rehearing *en banc*. 35 F.3d 437. In a unanimous opinion, the *en banc* court reached the same result as the original panel, but on different grounds. *Taghizadeh II*, 41 F.3d 1263. This time, the *en banc* court held that Customs searches of packages arriving at the border from a foreign country are governed not by 19 U.S.C. § 482, but by 19 U.S.C. § 1582 and its implementing regulations that "authorize the search of any package arriving from a foreign country." *Id.* at 1265 (emphasis in original).

Expressly overruling prior Ninth Circuit panel decisions requiring "reasonable cause to suspect" the presence of contraband in order to justify border searches of incoming packages, *id.* at 1266, the en banc court held that "[s]ection 1582, with no suspicion requirement, was applicable to

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    searches of incoming international mail." *Id.* at 1265 (emphasis added).[9/]

2    The court concluded that customs agents had the authority under section

3    1582 to search incoming internation mail at will, *as long as they follow the*

4    *applicable regulations." Taghizadeh II,* 41 F.3d at 1266 (emphasis added).

5

6    ## C. Taqhizadeh III

7    Following the en banc court's remand to the district court for further

8    proceedings, Taghizadeh filed a second motion to suppress evidence,

9    claiming that the search violated the Customs regulations held by

10   *Taghizadeh II* to govern that search. The district court again granted the

11   motion to suppress, finding that the Customs officials had no reasonable

12   cause to suspect that the package contained contraband, as required under

13   the Customs regulations. The government again appealed. In *United States*

14   *v. Taghizadeh,* 87 F.3d 287 (9th Cir. 1996) ("*Taghizadeh III*"), the Ninth

15

16

17   [9]    The court explained:

18   Other circuits have uniformly held that customs officials have
     unlimited discretion to search incoming international
19   packages. Uniformly, all circuits other than our own that have
     addressed the issue hold that the applicable statute is section
20   1582 not section 482. Because section 1582 contains no
     reasonable cause requirement, the other circuits have held that
21   it authorizes customs agents to search incoming international
     mail at will, as long as they follow the applicable regulations.
22   We conclude today that these other circuits are correct.

23   Id. at 1266 (citations omitted).

Circuit – for the third time – reversed the district court's suppression order.

In so doing, the court affirmed *Taghizadeh II's* holding that Customs searches of incoming international mail packages are governed by 19 U.S.C. § 1582 and the regulations found at 19 C.F.R. Part 145. *Id.* at 288-89. The court then focused on 19 C.F.R. § 145.3(a), which provides that sealed letter class mail may be opened and searched if Customs agents "have reasonable cause to suspect the presence of merchandise or contraband." *Id.* at 289. In accord with *Taghizadeh I,* the court held that the package's origination in a known source country for illicit narcotics, coupled with the destination of a U.S. post office box, provided the Customs agent with reasonable cause to suspect the presence of contraband. *Id.* at 290. The court thus recognized that 19 C.F.R. § 145.3 requires "reasonable cause" for the search of an incoming international package.

## 2. SUBSEQUENT DEVELOPMENTS

Following *Taghizadeh III,* the Ninth Circuit decided *United States v. Ani,* in which the United States appealed the suppression of seized heroin as evidence against Ani at trial. 138 F.3d 390 (9th Cir. 1998). Ani had been arrested after he accepted an incoming express mail package containing heroin. Prior to Ani's arrest, a United States customs inspector had examined and searched the package, which was in the shape of an 11" x 14"

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

book, as a "routine customs search."  The package was from Luxembourg and addressed to Jamain Davis, an alleged alias of Ani,. It was later determined that the address was a commercial mail box allegedly rented by the defendant.

In confirming the standards applicable to the examination of incoming international packages, the Ninth Circuit reiterated that although Regulation 145.2(b) provided that "[a]ll mail arriving from outside the United States ' was subject to customs examination' (with no suspicion requirement)," Regulation 19 C.F.R. § 145.3(a) "contained more specific language."  Regulation 145.3 permitted customs officers to open and examine "sealed letter class mail" only when they "have reasonable cause to suspect the presence of merchandise or contraband." 19 C.F.R. § 145.3(a). Citing *Taghizadeh III*, the court went on to confirm that express rate packages constitute "sealed letter class mail" within the meaning of § 145.1(c) and are therefore subject to § 145.3(a)'s reasonable cause inquiry. *Taghizadeh III,* 87 F.3d at 289.

For purposes of the decision, the court assumed without deciding that the customs inspector violated the agency regulation.  It nevertheless reversed the suppression order on other grounds.  Relying first on *United*

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1   *States v. Ramsey*[10] and then on *United States v. Caceres*,[11] the court ruled

2   that "absent a constitutional violation or a congressionally created remedy,

3   violation of an agency regulation does not require suppression of evidence."

4   *United States v. Ani*, 138 F.3d at 392.

5

6       In the court's view, the exclusionary rule was not triggered when a

7   customs inspector searched a package sent via international mail without

8   reasonable cause and contrary to postal regulations because border searches

9   of international mail do not require probable cause, and therefore the

10  customs inspector's search did not violate a constitutional mandate.  After

11  *Ani*, then – at least in the Ninth Circuit, it would appear that there is no

12  constitutional violation for border search of incoming international mail

13  destined for delivery within U.S. Customs territory by customs inspector.

14

15  _____

16      [10]   52 L Ed 2d 617, 97 S Ct 1972 (1977) (warrantless opening by a customs
17  official at the General Post Office in New York City, where incoming international
    airmail landing at Kennedy Airport was taken for routing and customs inspection, of
18  eight envelopes *entering* the country from Thailand, was permissible under the Fourth
    Amendment where the customs official had a "reasonable suspicion" that the envelopes
19  contained materials imported contrary to law as required by 19 U.S.C.A. § 482 for the
    opening of envelopes entering the country and where applicable postal regulations flatly
20  prohibited, under all circumstances, the reading of correspondence absent a search
    warrant).  The Court noted that the customs inspector, at the time he opened the letters,
21  knew that they were from Thailand, a known source of heroin, that they were bulky, that
    they were many times the weight of a normal air mail letter, and that they felt as though
22  there was something inside besides plain paper thus giving the inspector reasonable cause
    to suspect that there was merchandise or contraband in the envelopes.

23      [11]   440 U.S. 741, 744, 99 S.Ct. 1465, 1467-68, 59 L.Ed.2d 733 (1979) (no error to
    deny  the suppression of evidence obtained in violation of IRS regulations).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    *E.g., United States v. Hinton*, 222 F.3d 664 (9th Cir. 2000).

2

3       Although the *Ani* search was assumed to violate the postal regulation,

the search was conducted by a person authorized to conduct border searches

4

5 on mail that had a destination within the United States.  That distinction is

critical in this case.

6

7       In *United States v. Whiting*,[12] the Ninth Circuit ruled that a

8 warrantless border search is valid only when and if conducted by officials

9 specifically authorized to conduct such searches.  *Id.* at 696; *see also United*

10 *States v. Soto-Soto,* 598 F.2d 545, 548-50 (9th Cir.1979) (suppressing

11 evidence seized by the F.B.I. in purported border search because F.B.I.

12 agents were not "persons authorized" to conduct such searches under

13 section 482).[13]  The court also ruled that the authority to conduct border

14

15 searches is not to be liberally construed.[14]

16

_____

17     [12]  781 F.2d 692 (9th Cir. 1986).

18     [13]  *But see United States v. Hinton, supra*, where the Ninth Circuit noted that where a border search is conducted by a government official not empowered to make the search, "the relevant query is whether a constitutional right, not an agency regulation, has been violated. Consequently, rather than automatically suppress the evidence due to a violation of agency regulations, we must determine whether Hinton has a constitutional right of privacy to the information ... ."  224 F.3d at 675.

19

20

21     [14]  At issue in *Whiting,* however, was 19 U.S.C. § 482.  Under section 482, "Any officer of the customs may stop, search, and examine ... any vehicle, beast, or person, on which or whom *he or they shall suspect* there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law ... and to search any trunk or *envelope,* wherever found in which he may have reasonable cause to suspect there is merchandise which was imported contrary to law."

22

23

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    Therefore, even if the Constitution standing alone permits the

2    opening of any foreign *inbound* mail by Customs officials destined for

3    delivery within U.S. Customs territory without a warrant, Congress has

4

5    enacted statutes prescribing the procedures and scope of border searches

6    and search authority.  In *United States v. Hinton*, moreover, the Ninth

7    Circuit recognized that where the official plainly lacks authority to perform

8    the search, the relevant query is whether a constitutional right  has been

9    violated.  224 F.3d at 675.

10    In making this determination, the court looks at whether the recipient

11    has a constitutional right of privacy to the information.  *Id.*  Since Dai had a

12    reasonable expectation of privacy to and in the mail that was sealed within a

13    closed container (and especially that paid for as express mail),[15] there is no

14

15    question that a constitutional violation exists.

16    In *United States v. Sheldon*,[16] Defendant Hannah Sheldon sought to

17    suppress two illegal searches.  The first search involved a mailed parcel

18    addressed to her son Raymond that uncovered cocaine.  The second search

19

20

21    [15]  See *United States v. Ross*, 102 S.Ct. 2157, 456 U.S. 798, 72 L.Ed.2d 572
22    (1982); *United States v. Pitts*, 322 F.3d 449 (7th Cir. 2003) (Sealed packages sent through
      the mail are entitled to full protection under Fourth Amendment); *United States v. Licata*,
23    761 F.2d 537 (9th Cir. 1985)

      [16]  351 F.Supp.2d 1040 (D. Haw. 2004).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  occurred when the electronic beeper was triggered, indicating that the

2  package had been opened.  Discovery of the drugs, moreover, led to a sting

3  operation in which law enforcement officials replaced the cocaine with

4
5  sugar and an electronic beeper, then delivered the parcel to Sheldon's home.

6  Sheldon argued that because the initial search was conducted without a

7  warrant, the evidence obtained in that search, as well as the fruits of that

8  search, required suppression.  Ruling that Sheldon's privacy interest in the

9  Airborne Express parcel was sufficient to confer standing on her to

10
11  challenge the search of that parcel, the District Court determined that the

12  search violated her privacy interest and granted Sheldon's motion to

13  suppress.

14      The search was triggered when employees of Airborne Express, a

15  private parcel service in Signal Hill, California, became suspicious when an

16
17  individual requested overnight delivery for a parcel, but did not purchase

18  insurance.  The person who dropped off the parcel, moreover, did not have

19  identification and paid in cash.  When an Airborne Express employee called

20  the phone number of the sender, the person who answered did not know

21  anyone by that name.  The parcel was addressed to one Raymond Sheldon,

22  53-216C, in Punaluu, HI 96717.

23

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    Pursuant to Airborne Express policy concerning suspicious packages,

2  an employee opened the package, only to discover a rectangular object

3  tightly wrapped in plastic wrap.  Also included in the package's contents

4  were approximately twelve T-Fal pots and lids.  The Airborne employee

5  then contacted the police department, and the arriving officer made a

6  determination that the rectangular object looked suspicious, having

7  resembled and felt like drugs commonly packaged for shipping.  After

8  slitting open the package, the policeman noticed a powdery white substance

9

10 that tested positive for cocaine.  The Officer then seized the package and

11 contacted DEA agents that arranged for a controlled delivery.

12

13    After obtaining a warrant to insert an electronic beeper into the

14 package and to dust the package contents with fluorescent Sirchie powder[17],

15 federal agents also obtained an anticipatory search warrant, issued on the

16 same date, for the address of the package's delivery.  The DEA agents

17 replaced the cocaine with sugar and repackaged the parcel.  An undercover

18 officer posing as an Airborne Express delivery person delivered the parcel.

19 Some time after Defendant Hannah Sheldon signed for the parcel and took

20

21 it inside a residence, the beeper alerted.  Sheldon's hands subsequently

22

23

[17]    351 F.Supp at 1041-1042.

tested positive for the powder, indicating that she had handled the package.

Sheldon challenged the initial search and seizure of the package, claiming that her Fourth Amendment rights were violated when the Officer, acting without a warrant, opened the tightly wrapped, opaque Blue Brick contained within the Airborne Express parcel addressed to her son, Raymond. Ruling that she had manifested a legitimate expectation of privacy that was objectively reasonable,[18] the court acknowledged that a defendant who claims an ownership interest in a package could have a privacy interest in that package, despite being neither a sender nor the addressee. *Id.* at 1043-1044. Because Sheldon claimed ownership of the contents of the parcel, exercised control over it upon delivery, and took measures to reinforce her privacy interest following delivery, the court ruled that Sheldon held a privacy interest in the Airborne Express parcel that was violated by the Officer's warrantless search. *Id.* at 1044.

In the instant case and regardless of any claim there may be to the

---

[18]    *See California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (citing *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)); *see also United States v. Taketa,* 923 F.2d 665, 670 (9th Cir.1991) (a defendant challenging an illegal search must show "a subjective expectation of privacy that is objectively reasonable").

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    drugs,[19] Dai likewise has a sufficient privacy interest to challenge the illegal

2    search.  Dai took delivery of the parcel; the package was opened in the

3    privacy of Dai's home; and likewise measures were undertaken to insure

4    privacy, after taking delivery of the Package.  When the Package arrived,

5    Dai acted in a manner consistent with ownership by signing for the parcel

6    and taking possession of it.  He also acted to preserve his privacy interest in

7    the parcel by excluding others from the parcel.  Further, when officers

8    entered the house and searched it, Dai was the only person found to have the

9    chemical powder on his hands, indicating that he had been the only person

10   to open the parcel and handle its contents.

11         Finally, Dai's expectation of privacy was objectively reasonable,

12   given the concealment of the contraband inside the DVD player that was, in

13   turn, wrapped securely inside the sealed package.  Under the circumstances,

14   then, the warrantless search of the Package by officials not empowered to

15   conduct a search in the first place violated Dai's constitutional rights and

_____

[19] The Ninth Circuit has identified several factors to be considered in determining whether an individual has a privacy interest in an object.  A claim or ownership is only one of the factors.  See *United States v. Salvucci,* 448 U.S. 83, 91, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) ("While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of this Court's inquiry.").  Other factors include the defendant's exercise of control and supervision over the parcel, any measures taken by the defendant to insure privacy, and whether the type of container used demonstrates a privacy interest in the contents.  *Sheldon,* 351 F.Supp. At 1044, citing *United States v. Broadhurst,* 805 F.2d 849, 852 n. 2 (9th Cir.1986).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  must be suppressed.  Because the ensuing sting operation and subsequent

2  home search bear a direct causal connection to the initial illegal search, the

3  results of those operations must also be suppressed.  *See Dunaway v. New*

4  *York,* 442 U.S. 200, 218, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); see also

5

6  *Whiting*, 781 F.2d 692 (9th Cir. 1986).

7      In sum, regulations promulgated pursuant to 19 U.S.C. § 1581 render

8  "subject to "Customs examination" only that "mail arriving from outside the

9  Customs territory of the United States *which is to be delivered within the*

10
   *Customs territory of the United States.*"  Since customs officials simply lack
11
   the authority to conduct any searches of mail never destined for delivery
12
13  outside the Customs territory of the United States, the initial search was

14  infirm.  Suppression of evidence obtained as a result of the illegal search,

15  therefore, is the appropriate remedy.

16                          **CONCLUSION**

17      Jun Xiao Dai seeks suppression of evidence obtained from a package

18
   searched in violation of customs regulations by persons without the
19
20  authority to conduct the search.  For the reasons set forth above, therefore,

21  Mr. Dai requests that his request to suppress be granted.

22

23

Respectfully submitted this _____ day of November, 2005.

_____
ROBERT TENORIO TORRES, ESQ.
Attorney for Dai, Xiao Jun

**Robert Tenorio Torres**
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859