LEONARDO M. RAPADAS
United States Attorney
JAMIE D. BOWERS
Assistant United States Attorney
DISTRICT OF THE NORTHERN
MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP 96950
Telephone: (670) 236-2986
Fax:       (670) 236-2945

Attorneys for United States of America

UNITED STATES DISTRICT COURT
NORTHERN MARIANA ISLANDS

| UNITED STATES OF AMERICA, | Criminal Case No. 05-00022 |
|---|---|
| Plaintiff, | |
| v. | OPPOSITION TO DEFENDANT'S SECOND MOTION TO SUPPRESS, FILED NOVEMBER 18, 2005 |
| DAI Xaio Jun | Hearing Date: December 1, 2005<br>Time: 9:00 a.m. |
| Defendant. | |

Comes now the Plaintiff, United States of America, and in opposition to defendant's Second Motion to Suppress filed November 18, 2005, states to the Court the following:

### I. STATEMENT OF RELEVANT FACTS

On June 12, 2005 officers at the Customs and Border Protection Mail Facility in San Francisco, California discovered approximately 2.75 kilos of counterfeit Viagra pills hidden inside a DVD player which was contained in a cardboard box shipped from Shen Yang, China destined for Saipan, CNMI. Packages sent from China to the CNMI are routed through the San Francisco Customs and Border Protection (CBP) Mail Facility where they are all hand-inspected or x-rayed by officers.

In this case, the box in question was x-rayed by CBP officer F. Orozco who noticed what appeared to be pill shaped items concealed inside a DVD player. Officer Orozco opened the package and discovered 11 bags of blue diamond-shaped tablets imprinted with the word

"pfizer". When the pills were discovered the CBP officers notified Special Agent Michael Simpson from Immigration and Customs Enforcement (ICE) in San Francisco, who took control of the box and contents. The items were then forwarded to Immigration and Customs Enforcement agents on Guam so that a controlled delivery of the package could be attempted to identify those involved in the illegal smuggling of the counterfeit Viagra.

At the time the Customs and Border Protection agents x-rayed and subsequently opened the box, it was addressed to Chen Jian, P.O. Box 10002 PMB 212, Saipan, CNMI. The sender's address was listed as Zhu Jun, No. 19 Wen Yi Road, Shene District, Shen Yang, China.

## II.  DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED AS UNTIMELY

On November 18, 2005 defendant filed a Second Motion to Suppress Evidence urging the suppression of evidence obtained when the Customs and Border Protection officers originally opened the package in San Francisco. As was the case with defendant's first motion to suppress, the motion is untimely.

Defendant was arraigned on July 13, 2005. At the time of the arraignment the Court apprised him orally, and in a written order, that pretrial motions were to be filed no later than Monday, August 15, 2005. This was pursuant to Rule 12(c) of the Federal Rules of Criminal Procedure and Local Criminal Rule 12.1. Defendant's filing of the second motion to suppress on November 18, 2005 was more than three months beyond the August 15, 2005 motion deadline imposed by the Court. As in the case of the first motion to suppress, defendant neither sought nor obtained an extension of time before filing the motion.

Accordingly, the Court should enforce it's order and deny defendant's untimely motion.

## III.  DEFENDANT'S SECOND MOTION TO SUPPRESS SHOULD BE DENIED FOR LACK OF MERIT

Defendant seeks suppression of evidence obtained when the box from China was opened by the customs officials in San Francisco. Defendant argues that the opening of the package was in violation of his constitutional rights under the Fourth Amendment. This argument is without factual or legal basis.

1  Under the Border Search Exception to the Fourth Amendment, a search may be initiated
2  without a warrant, probable cause, or even reasonable suspicion. *United States v. Sutter*, 340
3  F.3d 1022, 1025 (9th Cir. 2003). Searches made at the border, pursuant to the long standing right
4  of the sovereign to protect itself by stopping and examining persons and property crossing into
5  the United States, are reasonable, simply by virtue of the fact that they occur at the border, and
6  are not subject to the warrant provisions of the Fourth Amendment. *United States v. Ramsey*,
7  431 U.S. 606, 616; 97 S. Ct. 1972, 1978 (1977). The United States Supreme Court has long held
8  that a boarder search, for Fourth Amendment purposes, need not take place at the actual physical
9  boarder, but may also occur at it's "functional equivalent." *Almeida-Sanchez v. United States*,
10 413 U.S. 266, 273, 99 S. Ct. 2535, 2539 (1973). By agreement between the United States
11 Customs and Boarder Patrol Agency and the United States Postal Service, certain places,
12 including the San Francisco/Oakland Mail Branch Facility, are designated as places for CBP to
13 inspect and search packages coming into the United States. These designated places are the
14 "border" for purposes of border searches. *See United States v. Ramsey*, 431 U.S. 606, 609 *FN2*.
15 In this case, the box in question was sent from China to be delivered to the CNMI via the United
16 States Postal System. The box was accordingly routed to the San Francisco Mail Facility, the
17 functional equivalent of the United States Border. There, it was examined and x-rayed by CBP
18 agents who ultimately discovered the smuggled counterfeit Viagra tablets concealed inside. The
19 box was properly opened pursuant to a valid border search.
20 Under United States Customs Regulations, sealed letter class mail, including boxes
21 mailed at the express rate, which appear to contain only correspondence, cannot be opened unless
22 a search warrant is obtained or the sender or addressee has given written authorization for the
23 opening. 19 C.F.R. § 145.3(b). However, sealed letter class mail that reasonably "appears to
24 contain matter in addition to, and other than, correspondence ..." may be opened. 19 C.F.R. §
25 145.3(a). *See United States v. Taghizadeh*, 87 F.3d 287 (9th Cir. 1996). In the case at bar, the
26 San Francisco CBP agents who examined the box in question had reasonable cause to suspect
27 that the package contained matter other than correspondence. The cover of the box itself
28 indicated the contents was a DVD player. Further, the size, shape, feel and weight of the box

indicated that it contained contents other than mere written material. Further, x-ray examination of the box confirmed that it contained merchandise and items consistent with illegally smuggled items. Thus, the opening of the box and removal of the contraband inside was properly performed by customs agent, pursuant to Federal Regulations. Even if the CBP agents had violated their own agency's regulation in searching the box, such action would not require suppression of the evidence discovered when the box was opened. *See United States v. Ani*, 138 F.3d 390, 391 (9th Cir. 1998). Absent a constitutional violation or a congressionally created remedy, violation of an agency regulation does not require suppression of evidence. *Id.*, at 392. Here, there was no constitutional violation when the border search of the package was performed.

Where illegally imported merchandise is discovered in a course of a customs mail search, the government may re-seal the package and control it's delivery so that the named addressee can be apprehended. See 19 C.F.R. § 145, appendix; and 19 U.S.C. § 1582. With regard of the package in question, the customs agents lawfully searched the box and properly proceeded with their investigation in a attempt to locate the recipient.

Defendant maintains that the CBP agents in San Francisco were not persons authorized to search the package because the package was destined for delivery to the CNMI, a place outside the Customs Territory of the United States. In support of this argument defendant relies on the Customs regulations set forth in 19 C.F.R. § 145.2. Defendant's reliance on this regulation is misplaced, based upon a misinterpretation of 19 C.F.R. § 145.2(b). (See defendant's motion, page 5.) Delivery of foreign mail to the CNMI is not the same as international mail transiting the United States from one foreign country to another, such as from China to France. Rather, because the CNMI is a United States Commonwealth, which uses the United States Postal Service, foreign mail from China is routed through California and is necessarily subject to a border search. The fact that the CNMI is serviced by the United States Postal Service and not by an independent foreign mail service, subjects the mail to United States Customs Examination. To find otherwise would limit the ability of the United States Customs Border Protection Agency, the United States Postal Service, and the United States Department of Homeland Security from adequately protecting the country's borders. 19 C.F.R. § 145.2(b) does not

prohibit the United States Customs Authorities from searching packages which will in turn be turned over to the United States Postal Service for delivery to addressees in the United States Commonwealth of the CNMI. Finally, most likely in anticipation that the government would argue defendant's lack of standing to challenge the San Francisco search of the package, defendant relies on the case of *United States v. Sheldon*, 351 F. Supp. 2d 1040 (D. Haw. 2004). The *Sheldon* case addressed the question of whether the mother of a package addressee had standing to contest the search of the package by law enforcement agents. The facts of the *Sheldon* case are sufficiently distinguishable from the case at bar. Here, the box in question was not addressed to defendant nor to a relative, or anyone living at his address. The defendant merely had access to the same mail facility box located at a local market. At the time the box was opened by Customs Authorities in San Francisco, defendant had no standing to challenge the search and no connection to it such that he should be afforded an expectation of privacy regarding its contents.

## IV.  CONCLUSION

For the foregoing reasons, defendant's second motion to suppress should be denied, first, because it is untimely and in violation of the Court's pretrial order; and secondly, because the motion is without merit as the search of the box by authorized Customs agents was lawfully performed.

Respectfully submitted,

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
JAMIE D. BOWERS
Assistant United States Attorney